

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DONALD R. JONES, | § | |
| Plaintiff, | § | |
| | § | Civil Action No. |
| v. | § | 3:00-CV-0535-BF |
| | § | |
| ARMY AIR FORCE EXCHANGE | § | |
| SERVICE (AAFES), et al., | § | |
| Defendants. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, having presided over a bench trial in this matter on December 10, 2001, and September 16, 2002, hereby **ENTERS** its findings of fact and conclusions of law.

**I.  Findings of Fact**

*A.  Background*

1. Plaintiff Donald R. Jones worked for Defendant Army and Air Force Exchange Service (AAFES) from April 27, 1976, until December 27, 1996. Plaintiff's position at the time he last worked for AAFES was as a Security Operations Manager at the AAFES Headquarters in Dallas, Texas.

2. On August 30, 1994, Plaintiff was placed on Leave Without Pay due to an illness. He was separated for disability effective December 27, 1996.

3. On March 9, 2000, Plaintiff brought the instant suit against AAFES, alleging violations of the Freedom of Information Act (FOIA) and Privacy Act.[1]

---

[1] Plaintiff also brought suit against U.S. Security Associates, Inc., alleging various state law causes of action. However, on August 6 and 15, 2001, United States Magistrate Judge Jane J. Boyle granted summary judgment in favor of that defendant.

147

### B. *FOIA Claims*

1. Five requests for information pursuant to FOIA are at issue in the instant action. Those requests were dated January 27, 1999; January 30, 1999; April 4, 1999; April 13, 1999; and February 2, 2000.

2. Plaintiff's request dated January 27, 1999, asked for "a copy of the concurrence/coordination sheet relative to Major General Barry D. Bates, Commander, AAFES, 13 January 1999 letter addressed to the undersigned." The standard practice of AAFES is that it does not necessarily produce "concurrence copies" even though AAFES Exchange Operating Procedures (EOP) 5-2 mentions the production of such documents. The Court credits the testimony of Marcia Drane that she did not routinely make such copies and that such a copy was not made for the correspondence addressed by Plaintiff's FOIA request of January 27, 1999. The Court also credits the testimony of Marcia Drane that she and others searched for the requested document and failed to find it. Therefore, such document did not exist and could not be provided in response to Plaintiff's FOIA request. Because AAFES did not generate the document, AAFES notified Plaintiff that no such document existed. Plaintiff appealed the denial to the Department of the Army (DOA). The DOA denied Plaintiff's appeal because no such document existed.

3. Plaintiff's request dated January 30, 1999, asked for "a copy of the concurrence/coordination document relative to Brigadier General Rodney W. Wood, Vice Commander and Director, EEO, 21 January 1999 letter addressed to the undersigned." The standard practice of AAFES is that it does not necessarily produce "concurrence copies" even though AAFES EOP 5-2 mentions the production of such documents. The Court credits the testimony of Marcia Drane that she did not routinely make such copies and that such a copy was not made for the correspondence

addressed by Plaintiff's FOIA request of January 30, 1999. The Court also credits the testimony of Marcia Drane that she and others searched for the requested document and failed to find it. Therefore, such document did not exist and could not be provided in response to Plaintiff's FOIA request. Because AAFES did not generate the document, AAFES notified Plaintiff that no such document existed. Plaintiff appealed the denial to the DOA. The DOA denied Plaintiff's appeal because no such document existed.

4. Plaintiff's request dated April 4, 1999, asked for "the concurrence copy of Brigadier General Rodney W. Wood 19 February 1999 letter to the undersigned ...." The standard practice of AAFES is that it does not necessarily produce "concurrence copies" even though AAFES EOP 5-2 mentions the production of such documents. The Court credits the testimony of Marcia Drane that she did not routinely make such copies and that such a copy was not made for the correspondence addressed by Plaintiff's FOIA request of April 4, 1999. The Court also credits the testimony of Marcia Drane that she and others searched for the requested document and failed to find it. Therefore, such document did not exist and could not be provided in response to Plaintiff's FOIA request. Because AAFES did not generate the document, AAFES notified Plaintiff that no such document existed. Plaintiff appealed the denial to the DOA. The DOA denied Plaintiff's appeal because no such document existed.

5. Plaintiff's request dated April 13, 1999, asked for "a copy of the 'proper notification' of separation which AAFES Command used to report 27 December 1996 as the effective date of my separation to the Honorable Members of Congress." The original notification to Plaintiff regarding his separation had incorrectly stated that Plaintiff was to be separated effective September 1, 1994; however, Plaintiff successfully appealed that date and caused AAFES to change

Plaintiff's separation date to December 27, 1996. AAFES has provided Plaintiff with all documents relating to the appeal and change of his effective separation date. However, to the extent Plaintiff's FOIA request seeks a specific document entitled "final decision of separation for disability" with an effective date of 27 December 1996, the Court credits the testimony of Charles Wells that he searched for the document and failed to find it. Therefore, to the extent that the requested documents exist, AAFES has complied with Plaintiff's FOIA request of April 13, 1999.

6. Plaintiff's request dated February 2, 2000, asked for "copies of any and all identification notices and/or posters which depict my photograph and/or other type photocopied picture/image (in black & white and/or in color) along with any and all written instructions given to Advance Security personnel and/or other contract security personnel (past or present) relative to my debarment from HQ AAFES and/or prohibition against being permitted on HQ AAFES property. This request includes, but not limited to, copies of any and all written instructions, justifications, debarment notices, memoranda, notes and notices/posters bearing my photograph and/or photocopied image/picture which have been and/or continue to be displayed/posted in contract security guard stations located on HQ AAFES property." As discussed below, AAFES has never barred Plaintiff, or otherwise prohibited Plaintiff, from entering any AAFES property. Furthermore, AAFES has never posted Plaintiff's photograph at its guard shack or at any of its guard stations. Therefore, there were no documents responsive to Plaintiff's FOIA request of February 2, 2000. Plaintiff appealed the denial to the DOA. The DOA denied Plaintiff's appeal because no such documents existed.

### C.    *Privacy Act Claims*

1. In a letter to Congressman Martin Frost, dated November 18, 1998, Plaintiff requested the Congressman's "assistance and intervention" regarding his separation from AAFES.

Plaintiff wrote similar letters to Senator Kay Bailey Hutchison and Senator Phil Gramm. The Congressman and the Senators forwarded the letters to AAFES and requested information in response to Plaintiff's inquiries.

2. AAFES responded to the congressional offices' requests by letter and explained that Plaintiff had been separated from his employment due to disability. The letters also explained that AAFES had based its decision on information from "one of Mr. Jones' attending physicians." The letters identified the attending physician by name; the place of the attending physician's employment; and, by implication, the attending physician's professional specialty.

3. In order to maintain security at its facilities, AAFES contracts with a private company, U.S. Security Associates, Inc. (USSA), to provide unarmed security personnel. At all times relevant to this action, Mr. Roy Pierce monitored contract compliance. Mr. Pierce was also responsible for "anti-terrorism" and security at the AAFES Headquarters.

4. As part of its contract compliance, USSA employs a "captain" of the guards on the AAFES premises. Mr. W.A. Roberson served as the captain during the relevant period.

5. During the relevant period, Mr. Pierce provided Mr. Roberson with photographs of individuals who exhibited behavior that was either disruptive or potentially dangerous. On two occasions, Mr. Pierce provided Mr. Roberson with photographs of individuals who were barred from the AAFES Headquarters. Mr. Roberson posted each of these photographs at a guard shack located at the entrance to the AAFES parking lot ("guard shack"), as well as at guard stations inside the AAFES Headquarters building ("guard stations").

6. AAFES has never considered Plaintiff to be disruptive or dangerous with respect to AAFES. Furthermore, AAFES has never barred Plaintiff from any AAFES facility. As such,

AAFES has never had cause to post Plaintiff's photograph at the guard shack or at any of the guard stations.

7. The Court credits the testimony of Mr. Pierce that he did not direct Mr. Roberson to post Plaintiff's photograph and that he never observed Plaintiff's photograph at the guard shack or at any of the guard stations. The Court also credits the testimony of Mr. Roberson that Plaintiff's photograph was never posted at the guard shack or at any of the guard stations.

8. Plaintiff has never observed his own photograph at the guard shack or at any of the guard stations.

9. The testimony of Joetta Nickle, Thomas Redding, and Roy Taylor that Plaintiff's photograph was posted at the guard shack during the relevant period is based on misidentification. These witnesses observed the photograph of another man. The other man, whose photograph was posted at the guard shack during the relevant period, bears a physical resemblance to Plaintiff.

10. Therefore, AAFES has never posted Plaintiff's photograph at the guard shack or at any of the guard stations.

## II. Conclusions of Law

### A. *Jurisdiction and Venue*

1. The Court has jurisdiction pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 552(a)(4)(B), and 5 U.S.C. § 552a(g)(1)(C) & (D). AAFES is a joint military command of the U.S. Army and U.S. Air Force; it is a non-appropriated fund instrumentality of the U.S. Government performing governmental functions. *Standard Oil Co. of California v. Johnson*, 316 U.S. 481 (1942).

2. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

3. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

### B.   FOIA Claims

1. "[U]nless the requested material falls within one of ... nine statutory exemptions, FOIA requires that records and material in the possession of federal agencies be made available on demand to any member of the general public." *N.L.R.B. v. Robbins Tire and Rubber Co.*, 437 U.S. 214, 221 (1978).

2. Under 5 U.S.C. § 552(a)(4)(B), "federal jurisdiction is dependant upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980).

3. Although the plaintiff has the "initial burden" of establishing jurisdiction, "[i]t is the agency's burden to prove the non-existence of the records sought." *Goldgar v. Office of Administration, Executive Office of the President*, 26 F.3d 32, 34 (5th Cir. 1994).

4. With respect to the FOIA requests dated January 27, 1999; January 30, 1999; and April 4, 1999, AAFES has met its burden of establishing the non-existence of the requested documents. As discussed above, AAFES did not generate the "concurrence copies" at issue in those FOIA requests.

5. With respect to the FOIA request dated April 13, 1999, AAFES has provided Plaintiff with all notifications that AAFES generated regarding Plaintiff's separation from AAFES. Therefore, to the extent that the requested documents exist, AAFES has complied with Plaintiff's FOIA request of April 13, 1999.

6. Finally, with respect to the FOIA request dated February 2, 2000, AAFES has met

its burden of establishing the non-existence of the requested documents. As discussed above, AAFES has never posted Plaintiff's photograph at the guard shack or at any of the guard stations at AAFES Headquarters.

### C. *Privacy Act Claims*

1. The Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record [is otherwise authorized by the Act]." 5 U.S.C. § 552a(b). *See also Doyle v. Behan*, 670 F.2d 535, 538 (5th Cir. 1982).

2. With respect to Plaintiff's allegation that AAFES disclosed protected information to three congressional offices in violation of the Privacy Act, Plaintiff is estopped from asserting such a claim because AAFES released the information pursuant to congressional office inquiries that were initiated at Plaintiff's request. *Gowan v. United States Dep't of the Air Force*, 148 F.3d 1182, 1194 (10th Cir. 1998); *Pellerin v. Veterans Admin.*, 790 F.2d 1553, 1556 (11th Cir. 1986).

3. With respect to Plaintiff's allegation that AAFES posted his photograph in violation of the Privacy Act, Plaintiff has failed to meet his burden of showing that AAFES ever posted his photograph at the guard shack or at any of the guard stations at AAFES Headquarters.

4. Finally, Plaintiff has presented no evidence of compensatory damages. *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 652 (5th Cir. 1994) ("[O]ne who seeks compensatory damages must present evidence of those damages."). The testimony of Thomas Redding that seeing Plaintiff's photograph "raise[d] questions in [his] mind," but that it did not lower his personal opinion of Plaintiff, is legally insufficient to establish compensatory damages. Thus, even if Plaintiff

had proved the elements of his Privacy Act claims, Plaintiff would still not be entitled to compensatory damages.

### III.   Conclusion

In accordance with the above findings of fact and conclusions of law, it is the decision of this Court that judgment be entered in favor of Defendant and that Plaintiff take nothing from his claims.

**SO ORDERED.** October 16, 2002.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE